UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COREY COLLINS, #211819,

        Petitioner,

v.

MARY BERGHUIS,

        Respondent.

_____/

Case No. 09-cv-10627

HONORABLE STEPHEN J. MURPHY, III

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY

Petitioner Corey Collins, presently confined at the Newberry Correctional Facility, Newberry, Michigan,[1] seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Collins challenges his convictions for second degree murder, armed robbery and first degree home invasion. The Court has reviewed the petition, amended petition, the response by the state, and the record, and finds that Collins has not established that he is entitled to habeas relief. The petition will therefore be denied.

## I. FACTS

Collins' convictions arise out of the robbery and murder of Kemp Traylor on March 16, 1998. On that date, several masked men entered Traylor's house, terrorized Traylor and his fiancee, and shot Traylor.

---

[1] Petitioner was incarcerated at the E.C. Brooks Correctional Facility in Muskegon Heights, Michigan, when he originally filed his habeas petition; however, he has since been transferred to the Newberry Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption. Because, however, the Court is denying the petition in this case, it finds no reason to do so.

Keisha Dixon testified that she was alone with Traylor on the first floor of Traylor's house on Kilbourne street in the City of Detroit when they heard a loud noise in the back of the house.  Traylor walked toward the kitchen to investigate and Dixon stayed in the office.  Dixon heard a gunshot and went under a desk.  Dixon heard the sound of feet and saw Traylor on the ground.  Dixon could not see anyone else at that point but heard the sound of more than one male voice in the room telling Traylor to get off the floor and Traylor saying that he had been shot in the stomach.  Dixon then heard a male voice telling her to come out from under the desk. Dixon saw men wearing black clothing and ski masks. She was taken to the living room and told to lay on the floor.  The men demanded money from Traylor; Traylor told them he would take them to the money.  While two men stayed with Dixon, the others went upstairs with Traylor.  Dixon heard them ransacking the house. While Dixon was face-down, she was assaulted by one man who took off her bra, fondled her breast with gloved hands, and inserted his gloved fingers into her vagina.  She also felt someone insert a hard, cold object between her buttocks.

Traylor was brought back into the dining room where Dixon was lying on her stomach and was told to lie on top of her.  Dixon heard voices demanding money and the location of Traylor's truck.  Dixon heard Traylor say that he had given them everything that he had to give, and heard someone respond that if he didn't give them more money they would have to kill him. The men told Traylor to get off Dixon.  Dixon felt Traylor roll off her. Dixon heard a click and then a gunshot.  She waited for a while and didn't hear anything else.  When she lifted her head she saw Traylor's body on the dining room floor.

Dixon went to Traylor's sister's house two doors down on Kilbourne.   Walter Daniel, Traylor's brother-in-law, testified that he was at his house late at night on March 16 when he heard Keisha Dixon banging on the door and screaming.  He opened the door and

Dixon came in and fell to the floor, screaming "help, help," and "they killed him."  Daniel went to Traylor's house and found Traylor dead on the dining room floor.

On April 28, 1998, almost six weeks after the Traylor homicide, Officers Vaughn Watts and Tyrone Quinn were dispatched to 10871 Lakepointe, Detroit, in response to a domestic violence call.  Officers Watts and Quinn both testified at Collin's trial.  At the house on Lakepointe, the officers encountered Shantaina Herron.  She appeared extremely upset, was crying and shaking, and had a red and puffy face.  She told the officers that her boyfriend, Corey Collins, had punched her, pointed a 9 millimeter handgun at her, and told her that he was going to kill her.  Herron told the officers she was afraid that Collins would kill her because "he had killed once before."  During the time the police were questioning Herron, the phone rang numerous times, and Herron would answer and hang up, shaking.  Herron told the officers that the caller was Collins.

The police asked Herron to elaborate on her statement that Collins had killed before.  Herron responded that Collins was involved in a homicide on Kilbourne.  Herron told the police that Collins had been bragging about it, and that he and a couple of his friends had sorted through property taken from the house and divided it among themselves.  Herron also told police that, in response to a news report about the homicide, Collins had said to her that "the bitch is lying," she wasn't raped.  Herron told the police that she had asked Collins how he knew, and he told her that "me and my boys did it and we didn't rape her."

Officers Watts and Quinn drove the squad car around the corner and returned to the house to wait for Collins.  Ten or fifteen minutes later, they heard someone scaling the back of the house, the rear balcony door opened and the officers saw Collins running toward Herron.  The officers arrested Collins.  They did not find a gun.

Shantaina Herron testified as a hostile witness in the prosecution's case-in-chief. She denied making most of the statements attributed to her by Watts and Quinn. Herron denied calling 911 on the night of April 28th. She testified that she had a swollen right eye but did not tell the police how she was injured. She testified that she told the police that she and Collins had gotten into a fight but did not tell the police that Collins had beaten her. Herron testified that her sister called the house while the police were there, but Collins did not call. Herron denied telling the police about a homicide or robbery on Kilbourne. She testified that she was taken to the homicide section and repeatedly questioned, but denied knowing anything about a homicide. She testified that Collins was home with her in the evening of March 16, 1998, and was still there when she woke up the following morning. She testified that the news came on the morning of March 17 with a report of the killing, but Collins made no references to the news report.

Herron testified that she had pawned a bracelet that was later identified as belonging to Traylor, but stated that she had received the bracelet from a friend, Chris Dockery. She admitted that she told the police that she was given the bracelet by Collins, but testified that she had lied to the police because they told her she would go to jail if she did not cooperate.

Sergeant Joann Kinney testified that the police received an anonymous call that Collins had killed Traylor. In response to this call, the police went to an address on Evanston. Herron was at the address. She told the police that Collins was at the 9th precinct, under an alias. Herron was taken to the homicide section, where she told police that she knew nothing about the Kilbourne homicide and denied making the anonymous phone call. Kinney testified that Herron did, however, tell the police that she had received from Collins a bracelet that had belonged to Traylor and pawned it. The police obtained

4

the bracelet, later identified as belonging to Traylor, from the pawn shop.  The log from the pawn shop showed that the bracelet was pawned on March 19, 1998.

Investigator Barbara Simon, the officer in charge, testified that she took a written statement from Herron on May 1, 1998.  The trial court admitted the statement for impeachment purposes, and Simon read the statement into the record, over objection.  In the written statement, Herron said that on March 17 at 6:30 in the evening, Collins asked her to turn on the news, and she and Collins saw a news story about the Kilbourne homicide.  According to Herron's statement, Collins denied a rape, told her that he wanted the Rolex watch, and asked Herron to pawn a man's gold and diamond bracelet because he needed the money to buy clothes to go to Chris Dockery's funeral.  Collins also told her that he was "bold on that thing.  I think I left prints."

Simon testified that the police drove Herron to several locations where she said that guns taken in the homicide could be located, and subsequently obtained search warrants for several houses.  The police also obtained a warrant for the pawn shop identified in the statement and seized that was identified as belonging to Traylor.

Police executed a search warrant for 19260 Ryan.  There, they confiscated various guns and property that were later identified as having belonged to Traylor.

Kelly Crockett testified  that she lived at the Ryan street address with her boyfriend, James Langford, who was a friend of Collins and of co-defendant Bryce Bell.  Crockett testified that she was present during the search, but denied being aware of any of the guns seized by the police, and testified that a jacket seized during the search belonged to Langford, rather than Traylor.

Sergeant Earnest Wilson testified that Kelly Crockett, James Langford and Tokoya Moore (a.k.a. co-defendant Bryce Bell) were arrested at 19260 Ryan on May 1st.  Wilson

testified that he had interviewed Collins, who told Wilson that he knew nothing about the killing on Kilbourne.  Wilson also testified that no fingerprints belonging to Collins were found at the Kilbourne house.

## II.  PROCEDURAL HISTORY

Collins was tried jointly with co-defendant Bryce Bell.  Collins was tried before a Wayne County Jury; Bell waived his right to a jury and proceeded with a bench trial.  Collins and Bell were each convicted on all counts.  Collins was convicted of second degree murder, armed robbery, and first degree home invasion.  On June 4, 1999, Collins was sentenced to concurrent sentences of 60 to 90 years for second degree murder, 50 to 90 years for armed robbery, and 14 to 20 years for the first degree home invasion.

Collins raised the following claims in his appeal by right:

I     Because Shantaina Herron had time to contrive and was responding to questioning, her statements to police officers did not qualify as excited utterances and the trial judge reversibly erred in admitting the hearsay over defense objection.

II.   The trial judge reversibly erred both in allowing a police investigator to read to the jury a prior inconsistent statement that was nominally admitted to impeach the credibility of Shantaina Herron, but was improperly used by the prosecutor as substantive evidence, and in not instructing the jury timely and adequately on the use of the statement only for impeachment.

III.  Where the origin of the 911 call was an important part of the prosecution's case against defendant Collins, the trial court reversibly erred by admitting over defense objection hearsay testimony that the call came from Shantaina Herron, Collin's girlfriend.

IV.   Where a courtroom spectator made an extended an prejudicial outburst, the trial judge reversibly erred by denying the defense's mistrial motion.

V.    The circuit judge exceeded the recommendation of the guidelines without adequate reasons for doing so, gave disproportionate sentences, abused his discretion, and violated due process, particularly where the co-defendant, Bryce Bell, who had a bench trial before the same judge, received a sentence that was below the guidelines despite the fact that the judge found that Bell was the killer.

VI. Convictions and sentence of Corey Collins for two counts of second degree murder where there was one death violated his constitutional rights to due process and against double jeopardy.

On September 18, 2001, the Michigan Court of Appeals affirmed the convictions in an unpublished, *per curiam* opinion, but remanded for correction of the sentences. *See People v. Collins*, No. 220544, 2001 WL 1134735 (Mich. Ct. App. Sept. 18, 2001). The Court of Appeals held that the fourteen-to-twenty-year sentence for first degree home invasion was invalid under Michigan law, and the sentencing court had erred by sentencing Collins to 60 to 90 years imprisonment for second degree murder and 50 to 90 years for the robbery conviction when his co-defendant Bell, who had a bench trial, was sentenced to 20 to 40 years for the same convictions. The Michigan Supreme Court denied Collins' application for leave to appeal in a brief form order on March 22, 2002.

On September 6, 2002, Collins was re-sentenced to 20 to 40 years for the second degree murder conviction, 20 to 40 years for the armed robbery conviction, and 10 to 20 years for the home invasion conviction. Collins appealed from the re-sentencing, but subsequently withdrew his appeal.

Collins then filed a motion for relief from judgment, raising the following issues:

I.     Defendant Collins was denied his constitutional right of confrontation and to a fair trial when the trial court allowed the prosecutor to introduce evidence that the police received an anonymous telephone call identifying the defendant as the perpetrator.

II.    Defendant Collins was denied his right to counsel and to be present when the trial judge answered questions from the jury without counsel or the defendant being present.

III.   The trial judge violated defendant's constitutional right to be presumed innocent, to remain silent and have the prosecution prove guilt beyond a reasonable doubt by telling the jury a defendant may not testify because he has nothing to say or because he did commit the crime.

IV.  Defendant Collins' right to remain silent and due process was violated
when the officer in charge testified regarding defendant's assertion of his
right to remain silent.

V.  Defendant Collins was denied due process and a fair trial when the
prosecutor engaged in misconduct by (a) making improper comments
about defense counsel's representation,; (b) vouched for the credibility of
her witness; (c) argued matters not established in evidence; and (d)
sought a conviction based on the civil duties of the jury.

VI.  Defendant Collins was denied due process of law under the federal and
state constitution because there was insufficient evidence at trial to
sustain a guilty verdict of first degree murder and the conviction is against
the great weight of the evidence.

VII.  Defendant Collins has established an entitlement to relief from the
judgment of his conviction and sentence by demonstrating good cause for
the failure to realize his present claims on direct appeal or in a prior
motion and actual prejudice from the alleged irregularities in this criminal
process.

The trial court denied Collin's motion for relief from judgment on August 16, 2006.

Collins application for leave to appeal was denied by the Michigan Court of Appeals on

February 27, 2008, and by the Michigan Supreme Court on December 23, 2008.

Collins filed his federal habeas on February 19, 2009.

## III.  STANDARD OF REVIEW

Section 2254(d) of Title 28, United States Code, imposes the following standard of

review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim -

(1)  resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law as determined by
the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State court
proceedings.

28 U.S.C. § 2254(d). This court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state -court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

## IV.  ANALYSIS

Collins raises the following nine claims for habeas relief:

I.   Petitioner Collins was denied his constitutional right of confrontation and to a fair trial when the trial court allowed the prosecutor to introduce evidence that the police received an anonymous telephone call identifying the petitioner as the perpetrator.

II.   Petitioner Collins was denied his right to counsel and to be present when the trial judge answered questions from the jury without counsel or the petitioner being present.

III.   The trial judge violated Petitioner's constitutional right to be presumed innocent, to remain silent and have the prosecution prove guilt beyond a reasonable doubt by telling the jury a petitioner may not testify because he has nothing to say or because he did commit the crime.

IV.   Petitioner Collins' right to remain silent and due process was violated when the officer in charge testified regarding Petitioner's assertion of his right to remain silent.

V.   Petitioner Collins was denied due process and a fair trial when the prosecutor engaged in misconduct by (A) making improper comments about defense counsel's representation; (B) vouched for the credibility of

9

her witness; (C) argued matters not established in evidence; and (D) sought a conviction based on the civil duty of the jury.

VI.    Petitioner Collins was denied due process of law under the federal constitution because there was insufficient evidence at trial to sustain the guilty verdicts and the convictions were against the great weight of the evidence.

VII.   The procedural default doctrine is inapplicable and Petitioner has otherwise established good cause and actual prejudice avoiding any perceived procedural default on those claims raised in post-conviction collateral proceedings.

VIII.  Petitioner Collins was deprived of his right of confrontation and due process when the trial court admitted prejudicial hearsay on three (3) occasions.

IX.    Petitioner Collins was denied a fair and impartial jury when a courtroom spectator made an extended and prejudicial outburst. At a minimum, the trial court was required to conduct an investigation into the impact that the outburst had on the jury.

Respondent argues that the first six claims, which were presented for the first time in a post-conviction motion for relief from judgment, are procedurally defaulted, and the eighth and ninth claims are either procedurally defaulted or lack merit. Petitioner's seventh habeas claim is not an independent habeas claim, but rather an argument that the procedural default doctrine does not apply. The Court agrees with Respondent that the first six claims are procedurally defaulted and the remaining claims are either defaulted or lack merit. The petition will therefore be denied.

A.    Claims I Through VI are Procedurally Defaulted and Lack Merit.

Habeas claims I through VI were not raised in Collins' direct appeal. Instead, Collins raised these claims for the first time in a post-conviction motion for relief from judgment under Mich. Ct. R. 6.500 *et seq.* The trial court denied Collins' motion for relief from judgment on procedural grounds, finding that the claims should have been raised on direct

appeal and Collins failed to establish that the rule should be excused in his case.  The Michigan appellate courts denied leave to appeal this ruling in standard form orders.

      1.  <u>Legal standard for procedural default</u>

The  procedural default doctrine applies to bar federal habeas relief when a state court has declined to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (citations omitted).  Review is barred because the state judgment does not rest on federal constitutional principles but rests upon independent and adequate state procedural grounds.  *Id.*  A habeas petitioner procedurally defaults a claim if:

> (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.

*Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir.2010) (*en banc*) (citations omitted).

In order to demonstrate "cause" for a procedural default, the petitioner must show that "some objective factor external to the defense" impeded his efforts to raise the claim in the state courts.  *McCleskey v. Zant*, 499 U.S. 467, 493  (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Objective factors can include interference by state officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *Id.* at 493–94.  Once the petitioner has established cause, he must  also show "actual prejudice" resulted from the claimed constitutional errors.  *Id.* at 494.  Alternatively, the petitioner's default can be excused if he can establish that his case is the "extraordinary instance[]" in which the constitutional violation "probably has caused the conviction of one innocent of the crime."  *Id.*  Petitioner does not argue that this "actual innocence" exception applies.

### 2.  Petitioner's first six habeas claims are procedurally defaulted

Collins' first six habeas claims are procedurally defaulted. Collins failed to comply with the requirement set forth in Mich. Ct. R.  6.508(D)(3) that bars a court from considering claims that are not asserted on direct appeal.  Because of this procedural default, the Michigan courts never addressed the merits of the federal claims Collins raised in his motion for relief from judgment.  The Wayne County Circuit Court relied upon the rule when it denied Collins' motion for relief from judgment.  The Michigan Court of Appeals and the Michigan Supreme Court each denied leave to appeal on the grounds that Collins had failed to meet the burden of establishing entitlement to relief under Rule 6.508.  Michigan Court Rule 6.508 is an applicable procedural rule that was actually enforced in Collins' case.  The rule is well established in this circuit as an adequate and independent ground upon which Michigan courts may rely to foreclose review of federal claims.  *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).  The first three prongs of the procedural default test are met.  Since Petitioner does not assert that the actual innocence exception applies, the Court may review the defaulted claims only if Collins can establish cause for his procedural default, and resulting prejudice.

### 3.  Petitioner has not established cause and prejudice to excuse his default

Collins asserts ineffective assistance of appellate counsel as cause for his procedural default.  Ineffective assistance of counsel has been held to amount to cause that may excuse a procedural default.  "Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

Appellate counsel has no obligation to raise every claim, and the decision of which claims to raise is ordinarily entrusted to counsel's professional judgment.  *Henness v.*

*Bagley*, 644 F.3d 308, 317 (6th Cir. 2011).  In order to evaluate a claim of ineffective assistance of appellate counsel, the court must assess the strength of the claims counsel failed to raise.  *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008).  The failure of counsel to include a claim on appeal can only be ineffective if there is a reasonable probability that inclusion of the claim would have changed the result of the appeal.  *Id.*  If there is a reasonable probability that the result of the appeal would have been different, the court then must consider "whether the claim was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel.'"  *Id.* (quoting *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

With this standard in mind, the Court addresses each of the defaulted claims.

a. Habeas claim I: Confrontation Clause claim

The first claim asserts that Collins was denied his right to confrontation by the admission of evidence that the police received an anonymous telephone call identifying Collins as the perpetrator.  The evidence, however, was not admitted as substantive evidence to convict the defendant, but was offered to explain the conduct of the police in arriving at Evanston street and encountering Shantaina Herron.  The Confrontation Clause does not apply to statements that are not offered for their truth.  *Crawford v. Washington*, 541 U.S. 36, 59 n. 9 (2004) ("[t]he Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.") Furthermore, the statements were ascribed by the prosecution to Herron, who testified at trial.  When a declarant appears for cross-examination at trial, the Confrontation Clause places no constraints on the use of the prior statement.  *Id.*  There is no reasonable probability that the result of the appeal would have been different if appellate counsel had raised this claim, and therefore appellate counsel was not ineffective for omitting it.

b.  <u>Habeas claim II: Ex-parte communication between trial judge and jury</u>

Petitioner's second claim is that he was denied his right to counsel and to be present when the trial judge answered questions from the jury without counsel or petitioner being present.  The record reflects that during jury deliberations the judge received a note from the jury asking about evidence.  The trial judge then stated:

> I did tell you at the close of the case in reading the jury instructions that you have to pay attention to the evidence and the evidence comes from the witness stand and any exhibits that were admitted.  And the only things that were admitted, ladies and gentlemen, was number one.  And so what I'm going to give you is the photographs that were admitted.  The other items that you have requested, two through six, were not admitted into evidence.
>
> So if you have any questions, you have to write them out.  But I am going to give you those exhibits that were admitted, the photographs that were admitted that you have requested.
>
> I do not recall off the top of my head what was admitted.  But if you think it might have been admitted, send another note out and I will consider it.  If that was admitted, I will send it in also.  But numbers two through six, those other requests that you made, were not admitted into evidence.
>
> So I'm going to ask that you go back and continue with your deliberations.  And I will send in the exhibits that were admitted.

The trial judge stated on the record that the defendant and counsel were not in the room but he had talked with both attorneys, and they both agreed that the only thing that should be sent in for the jury's consideration were the photographs requested.

Appellate counsel was not ineffective for failing to include this claim in Collins' direct appeal because it is not reasonably probable that the appeal would have been successful if this claim had been included.  "[A] defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to the outcome if his presence would contribute to the fairness of the procedure." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987).  The communication the trial judge had with the jury in this case, however, was an administrative communication, which is not considered to be a stage that is critical to the

14

outcome.  *See People v. France*, 436 Mich. 138, 143 (1990) (instructions regarding the availability of certain pieces of evidence are administrative communication; absence of defense during such communications does not carry a presumption of prejudice).  Since Collins makes no claim of actual prejudice, any appeal based upon the trial court's communication with the jury about the availability of evidence would not have succeeded.  *Cf. Bourne v. Curtin*, 666 F.3d 411, 414-15 (6th Cir. 2012) (rejecting ineffective assistance of appellate counsel claim for failing to raise claim of *ex parte* communcation with jury regarding re-hearing of testimony).

        c.  <u>Habeas claim III: Trial court statements during voir dire on presumption of innocence</u>

Petitioner's third claim for habeas relief asserts that the trial court denied his right to be presumed innocent, to remain silent, and to have the prosecution prove guilt beyond a reasonable doubt by telling the jury, during jury selection, that a defendant may not testify because he has nothing to say or because he didn't commit the crime.  The omission of this claim does not establish ineffective assistance of appellate counsel because it is not reasonably likely that the result of the appeal would have been different if this claim had been included.  The court's comment was buried in a discussion with a potential juror in which the court repeatedly emphasized that the defendant had the right to remain silent and the prosecution had the burden of proof to establish his guilt beyond a reasonable doubt.  The exchange ended when the trial judge excused for cause the potential juror, who said that he would hold the defendant's silence against him.  There was no objection by counsel.  The trial court did not violate the defendant's right to be presumed innocent, to remain silent, and to have the prosecution prove guilt beyond a reasonable doubt, and therefore appellate counsel was not ineffective for failing to raise this claim on appeal.

15

> d. <u>Habeas claim IV: Testimony regarding assertion of right to remain silent</u>

Petitioner's fourth claim is that his right to remain silent and right to due process was violated by testimony by the officer in charge regarding his assertion of his right to remain silent.  Sergeant Ernest Wilson was asked what he did in the investigation after the police received an anonymous tip concerning Collins' involvement in the Traylor homicide.  Wilson stated that "[w]e tried to talk to Mr. Corey Collins concerning the incident, but to no avail at that point."  On cross-examination, Collins' counsel asked Sergeant Wilson whether he talked to Collins, and "Corey Collins says that he didn't know nothing about no killing on Kilbourne, didn't he?" to which questions Wilson answered, "Yes."  At side bar, the prosecutor stated on the record that Collins said "I don't know nothing.  I am not saying anything."  The prosecutor did not further refer to Collins' invocation of his right to remain silent, either in further questioning or in her closing argument.

Appellate counsel was not ineffective for failing to raise this claim on appeal.  The fact that a criminal defendant remained silent after receiving his *Miranda* warnings cannot be used to impeach the defendant's testimony at trial.  *Doyle v. Ohio*, 426 U.S. 610, 619 (1976).  The brief reference in the prosecution's case in chief, however, is not a violation of *Doyle*.  Courts that have addressed the issue have held that brief or ambiguous comments by the prosecution that mention a defendant's silence only in passing, and do not argue or rely upon the invocation of silence, do not violate the Fifth Amendment.  *See, e.g., United States v. Baker*, 432 F.3d 1189, 1221-22 (11th Cir. 2005) (question whether there came a time in interview that defendant told officer he didn't want to talk any further did not violate Fifth Amendment); *United States v. Crowder*, 719 F.2d 166, 170 (6th Cir. 1983) (inquiring on cross examination of defendant's statement to FBI that he would not discuss matter further after telling inconsistent story to state police did not violate *Doyle*).

16

The Michigan Supreme Court has specifically held that a statement by a police detective that "I went out and attempted to interview [defendant], and at that time it was refused. He wished to speak to an attorney prior to me asking him any questions," did not violate the *Doyle* rule where the question asked by the prosecutor did not seek information about an interview with the defendant, there was no further questioning or argument about the defendant's silence, and the defendant did not testify at his trial. *See People v. Dennis*, 464 Mich. 567, 570, 577-78 (2001). Given the *Dennis* decision, it is not reasonably probable that the result of Petitioner's appeal would have been different if his appellate counsel had raised a *Doyle* claim. Petitioner has thus not established that his appellate counsel was ineffective for failing to raise this claim.

### e. Habeas claim V: Prosecutorial misconduct

Petitioner's fifth claim for habeas relief asserts that he was denied due process and a fair trial by prosecutorial misconduct. He asserts that the prosecutor committed misconduct by vouching for the credibility of Keisha Dixon, arguing matters not in evidence, improperly attacking defense counsel, invoked the jurors' civic duty in order to obtain a conviction, and improperly attempted to use Herron's statement as substantive evidence.

In evaluating a claim of prosecutorial misconduct, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). The courts in this circuit use a two-step test to determine whether prosecutorial misconduct amounted to a denial of due process. *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). The court must first determine whether the prosecutor's statements were improper. *Id.* If the court finds one or more statements improper, the court must then "'look to see if they were flagrant and

warrant reversal.'" *Id.* (*quoting United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999)). Flagrancy is determined by considering whether: 1) the statements tended to mislead the jury or prejudice the defendant; 2) were they isolated or part of a pattern; 3) were they deliberate or accidental; and 4) the strength of the evidence. *Id.*

The prosecutor is first accused of vouching for Keisha Dixon. In a portion of her closing argument discussing Dixon, the prosecutor stated:

> Ladies and gentlemen, sure, you can ask yourselves, how come she's alive and he is dead. Well, ladies and gentlemen, I think that if you look at -- you had an opportunity to look at Keisha Dixon and to judge her credibility as she sat before you on the witness stand. And you can decide if that was genuine, or you can decide all of that was put on for your benefit. And I do believe that you will see the genuineness of Keisha Dixon. (Vol. VII, pg. 78).

"Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness." *Francis*, 170 F.3d at 550. Vouching generally involves direct comments that assert the prosecutor's own belief in the witness's credibility or that suggest the prosecutor has special knowledge of facts not before the jury or of the credibility of the witnesses. *Id.*

The prosecutor's comment quoted above were not improper vouching. She did not assert that she believed Dixon, nor did she suggest that she had special facts regarding Dixon's credibility that were not before the jury. Instead, the prosecutor asked the jury to judge Dixon's credibility based on her appearance on the witness stand.

Petitioner also asserts that the prosecutor improperly argued facts not in evidence. In her closing argument, the prosecutor asserted that Traylor's vest and jacket were found in the search of Langford's house "where Corey Collins hangs out," which Petitioner argues was improper because there was no evidence that Collins "hangs out" at that address. The prosecutor also attempted to undermine Herron's testimony that she had

18

received Traylor's bracelet from Chris Dockery, rather than from Collins, and pawned it on Dockery's behalf, by asserting that "Chris Dockery gets killed sometime between [March 17] and the 19th." Collins argues this statement was improper because there was no evidence admitted of the date of Dockery's death.

It is improper to argue facts not in evidence. *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004). A prosecutor may, however, argue reasonable inferences from the evidence admitted at trial. *Byrd v. Collins,* 209 F.3d 486, 535 (6th Cir. 2000).

The prosecutor's statement that evidence was collected from a house that Collins "hangs out" at was not improper. The evidence at issue was seized during a search of the house on Ryan Street where Kelly Crockett and James Langford had lived. Crockett testified that Collins was a friend of James Langford, and that he visited their house "[m]aybe once a week." Vol. 6, p. 92. The prosecutor's statement that Collins "hangs out" at that house was a reasonable inference from this testimony.

The prosecutor's statement that Dockery was killed sometime between March 17 and March 19 is more problematic. The only evidence that was offered at trial that concerned Dockery's death was contained in Shantaina Herron's statement to Investigator Barbara Simon, which Simon read at trial. In that statement, Herron said that Collins asked her to pawn Traylor's bracelet because Collins needed money to buy clothes to go to Chris Dockery's funeral. That statement, however, was not admitted substantively, but was only admitted to impeach Herron's testimony at trial. Collins is therefore correct that the prosecutor's statement regarding the date and manner of Dockery's death was improper.

Petitioner also argues that the prosecutor improperly attacked defense counsel. In support of this argument, petitioner points to the following exchange:

MS. KOWAL: Ladies and gentlemen, there was a reference to Mr. Traylor and guns, and I know that he had all of these guns. And then a very improper

question or statement was made by Mr. Edison just to throw that out to you. Remember when –[2]
MR. EDISON: Your honor, I object to that.
MS. KOWAL: Mr. Mathews was on the stand.
MR. EDISON: All the improper statements she has come up with, and the Court ruled on those motions or objections, and so once the Court rules, then that's it, the Court speaks.
THE COURT: Thank you, counsel.  (Vol. VIII, pg. 145-46).

The statement is arguably improper, because defense counsel's questions are legally irrelevant to Collins' guilt.  Following the above exchange, and objection, the prosecutor immediately moved on and did not thereafter mention defense counsel's conduct.

Finally, Collins asserts that the prosecutor acted improperly by appealing to the jury's civic duty.  At the end of her rebuttal argument, the prosecutor said the following:

Finally, ladies and gentlemen, do justice in this case.  There is more than ample evidence when you look at the circumstances of how this whole thing came about.  And keep your focus on the ball.  Keep it on the Slinky, as it were.  What happened; what was the result; what act; what reaction; what information; what reaction.  Physical evidence does not lie.  Circumstances don't lie.

Ladies and gentlemen, do justice in this matter and find Corey Collins as an aider and abettor responsible for the killing of Kemp Traylor.  Justice is due the accused; justice is due the accuser.

"Unless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not *per se* impermissible."  *United States v. Solivan*, 937 F.2d 1146, 1151 (6th Cir. 1991).  The prosecutor's comments here were permissible, as they were  based on the evidence, rather than an attempt to have the jury ignore the evidence in the case.  *Cf.  Buell v. Mitchell*, 274 F.3d 337, (6th Cir. 2001) (prosecutor's statement to "'send a message to the Robert Buells of the world' that 'if you're going to commit this kind of crime then you better be expecting to pay the ultimate price,

---

[2] The prosecutor appears to be referring to the following question defense counsel asked of a friend of the deceased:  "MR: EDISON: Did you know [Traylor] was convicted of armed robbery and ---"  (Vol. 7,  p. 19).  The court had previously ruled *in limine* that defense counsel was prohibited from raising the deceased's criminal convictions.

yourself'" not prejudicial); *United States v. Reliford*, 58 F.3d 247, 250 (6th Cir. 1995) (prosecutor's request to return verdict "that tells the defendant ... that the citizens of the Western District of Tennessee won't tolerate these type of crimes" not misconduct); *United States v. Alloway*, 397 F.2d 105, 113 (6th Cir. 1968) (prosecutor's request for jurors to be the "conscience of the community" within the bounds of permissible advocacy).

In all, Petitioner has identified two arguably improper comments in the prosecutor's closing argument: the date and cause of Dockery's death and her comment to the jury that defense counsel had made "a very improper statement or question."  These comments did not, however, rise to the level of a due process violation.  They were isolated, minor in the context of the total evidence against the defendant, and there was no indication that they were intentional.  Petitioner would have been highly unlikely to have succeeded in a claim of prosecutorial misconduct, and therefore his appellate counsel was not ineffective for failing to raise such a claim on Petitioner's direct appeal.

  f. <u>Habeas claim VI: Insufficient evidence</u>

Collins' sixth claim for habeas relief asserts that there was insufficient evidence for conviction.  Appellate counsel was not ineffective for failing to raise the claim because it is meritless.  Sufficient evidence supports a conviction if, after viewing the evidence (and the inferences to be drawn therefrom) in the light most favorable to the prosecution, the court can conclude that any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

Applying this standard, there was sufficient evidence to sustain a conviction.  The testimony of Keisha Dixon establishes the essential elements of the charged crimes as to the as-then unidentified perpetrators.  Petitioner's statements to Shantaina Herron, along with the evidence connecting him to the pawned bracelet and to the items seized in at the

Ryan street address, were sufficient for a rational jury to find that the petitioner participated in the murder, home invasion, and armed robbery.

Petitioner has failed to establish that the failure of his appellate counsel to raise these claims on direct review constitutes ineffective assistance of counsel.  Petitioner cannot establish cause to excuse his procedural default of these six claims.  Habeas relief is not available for these claims.

### B. Habeas Claim VIII: Confrontation Clause and Due Process claims based upon the admission of three out-of-court statements by Shantaina Herron

Collins' eighth claim for habeas relief asserts that he was denied his right to due process and confrontation through the admission of three hearsay statements.  Collins claims that his federal rights were violated by the admission of Herron's oral statements to Officers Watts and Quinn, which were admitted by the trial court through the excited utterance exception to the hearsay rule, by the admission of Herron's written statement to the police, admitted by the trial court for impeachment purposed through the testimony of Investigator Barbara Simon, and by the admission of testimony of Officer Watts regarding the source of the 911 domestic violence call.

These claims were raised initially as the first three claims in Collins' direct appeal. However, the claims as raised in the Michigan state courts argued that these statements were incorrectly admitted as a matter of state law, not as a matter of federal law.  Collins' federal claims are therefore unexhausted.  A federal court may not grant relief on a habeas claim if that claim was not exhausted in the state courts.  28 U.S.C. § 2254(b)(1).  In order to exhaust state remedies, a claim must be "fairly presented" to the state courts.  *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005) (*quoting Baldwin v. Reese*, 541 U.S. 27, 29 (2004)).  Exhaustion requires the prisoner to have presented the state courts "with the same claim he urges upon the federal courts."  *Picard v. Connor*, 404 U.S. 270, 276 (1971).

22

"A claim may only be considered 'fairly presented' if the petitioner asserted both the factual and legal basis for his claim to the state courts."  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  To determine this, the court must examine the pleadings for

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Id.*

An examination of Collins' pleadings in the Michigan Court of Appeals and the Michigan Supreme Court reveal that, while Collins did allege that the trial court erred in admitting this evidence, he did not fairly present either a due process claim or a Confrontation Clause claim to those courts.  Instead, Petitioner's briefs assert that the trial court erred under state law in admitting this evidence.  There is no discussion of federal constitutional rights and no citation to federal constitutional cases, and no use of the terms "due process" or "Confrontation Clause."

Since Petitioner did not fairly present his current due process and Confrontation Clause claims to the state courts, this Court must analyze whether he can return to state court to exhaust these claims properly.  *Katt v. Lafler*, 271 Fed. Appx. 479, 482 (6th Cir. 2008).  Michigan rules foreclose proper exhaustion at this point, because Collins has already filed one motion for post-conviction relief, and the Michigan court rules prohibit a criminal defendant from filing more than one motion for relief from judgment unless the subsequent motion is based on a retroactive change in law or newly discovered evidence.  Mich. Ct. R. 6.502(G).  Neither exception would apply here, so Collins' Confrontation Clause and due process claims are procedurally defaulted.  This Court may not grant habeas relief on unexhausted and procedurally defaulted claims.

Petitioner's due process and confrontation clause claims also lack merit, and therefore the Court would deny relief on these claims even if not defaulted.

1.  Admission of Herron's statement to Officer Watts as Excited Utterance

Petitioner asserts that the admission of Herron's oral statement to Officer Watts violated his rights under both the Confrontation Clause and the Due Process Clause.

a.  Confrontation Clause

The admission of Herron's statements to Officer Watts did not violate the Confrontation Clause because Herron testified at trial and was subject to cross-examination. *Crawford*, 541 U.S. at 59 n. 9.

b.  Due process

Any claim that the Michigan courts incorrectly applied the Michigan laws of evidence in admitting the testimony is not cognizable on habeas review, because federal habeas relief is only available for violations of federal law. *Lorraine v. Coyle*, 291 F.3d 416. 441 (6th Cir. 2002).  This Court is also bound by the Michigan Court of Appeals legal holding that the statement qualified as an excited utterance for purposes of Michigan law and was therefore admissible as a matter of state evidentiary law.  *See  Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"). The admission of Herron's statements may only form the basis for habeas relief if "the introduction of [the] evidence is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling v. United States*, 493 U.S. 342, 352 (1990) (quoting *United States v. Lovasco*, 431 U.S. 783, 790 (1977)).  The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.*  The petitioner

bears the burden of demonstrating that the admission of the evidence violates fundamental concepts of justice. *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007).

Since the statement was properly admitted under state evidentiary law, there is no basis for Collins' claim that its admission violates his right to due process. The United States Supreme Court has recognized the admission of excited utterances as a firmly rooted exception to the hearsay rule. *See Michigan v. Bryant*, 131 S. Ct. 1143 (2011) (upholding admission of statement of victim identifying the defendant as the shooter under excited utterance exception to hearsay rule and not violative of Confrontation Clause). The admission of Herron's oral statement did not violate the due process clause.

2. Admission of Herron's written statement to Investigator Simon

There is also no merit to Collins' claim that the trial court's admission of Herron's statement to Investigator Simon violated his rights to due process and confrontation.

a. Confrontation Clause

The Confrontation Clause does not apply to the admission of Herron's statement, because Herron testified at trial and was subject to cross-examination. *See Crawford*, 541 U.S. at 59, n.9. In addition, the written statement was introduced for impeachment, rather than for substantive evidence, and the Confrontation Clause does not apply to the use of out of court statements for purposes of impeachment. *See id.*

b. Due Process

The Michigan Court of Appeals held that under Michigan evidence law extrinsic evidence may be used to prove that a witness made a prior inconsistent statement but may not be used to prove the content of the statement, and that in Collins' case the prosecution did not lay the proper foundation for Investigator Simon to read the statement into evidence. *Collins*, 2001 WL 1134735 at *4-5. The Michigan Court denied relief, however,

because the defense had waived error by failing to object to the introduction of the evidence and, on appeal, the defendant failed to show that the error affected the outcome of the proceedings, because Herron's written statement to Simon was largely the same as her properly admitted oral statement to Officer Watts.

Petitioner was not denied due process of law by the reading of Herron's written statement into evidence. The admission of Herron's statements may only form the basis for habeas relief if the evidence "'is so extremely unfair that its admission violates 'fundamental conceptions of justice.'" *Dowling*, 493 U.S. at 352. The written statement at issue was largely duplicative of the oral statement properly admitted. The erroneous reading of the statement itself to the jury was not so extremely unfair as to violate fundamental conceptions of justice.

### 3. Admission of source of 911 call

Collins' claim that his due process and Confrontation Clause rights were violated by the admission of testimony by Officer Watts that the 911 call originated from Herron's residence. The facts are recounted in the opinion by the Michigan Court of Appeals:

> On April 28, 1998, Officer Watts responded to a family disturbance call at 10871 Lakepointe at approximately 10:00 p.m. Herron was at the residence and told Officer Watts that she had called 911, but had to leave the line open because defendant had still been in the apartment, and she was unable to talk. Herron testified for the prosecution, but was immediately classified as a hostile witness. Herron denied that she called 911 on April 28, 1998. Officer Watts was recalled and testified that the 911 call originated from Herron's residence. He testified that when a 911 call is made, the address appears on a screen in his police car. On cross-examination, Watts admitted that he did not see the address on his computer screen, but that the dispatcher told him that the 911 call originated from Herron's residence.

*Collins*, 2001 WL 1134735, at *6.

a. Confrontation Clause

The Michigan Court of Appeals held that the hearsay statement of the dispatcher was not admitted for its truth, but was admitted to impeach Herron's testimony that she had not placed the 911 call.  The trial court admitted the dispatcher's statement for a non-hearsay purpose, and instructed the jury that it could not be considered for its truth, and therefore the admission of the testimony did not violate the Confrontation Clause.  *See Tennessee v. Street*, 471 U.S. 409 (1985).  The Confrontation Clause also applies only to testimonial hearsay. *Davis v. Washington*, 547  U.S. 813, 821 (2006).  The primary purpose of the dispatcher's statement identifying the source of the 911 call was to assist the police in responding to an ongoing emergency and was therefore non-testimonial. *See id.* at 822.

b. Due Process

Finally, there is no merit to Petitioner's claim that the admission of the dispatcher's hearsay statement as to the source of the 911 call violated his right to due process.  The testimony of Officer Watts connecting Herron to the 911 call was not central to the case and was only relevant to impeach Herron's claim that she did not call 911.  Given the minor relevance of the testimony, there is no credible argument that the admission of the testimony, permissible under Michigan law, violated "fundamental conceptions of justice."

C. Habeas Claim IX: Collins was denied a fair and impartial jury when a courtroom spectator made an extended and prejudicial outburst

Collins' final claim for habeas relief asserts that he was denied a fair trial when a spectator made an extended and prejudicial outburst.  Collins asserted a claim based upon this outburst on direct appeal.  The Michigan Court of Appeals addressed the claim as follows:

> During the direct examination of Herron, there was an outburst from a man in the audience. Defense counsel asked for a recess.  The trial judge determined that the examination should proceed.  Shortly thereafter, during a recess, defense

27

counsel moved for a mistrial. Defense counsel stated that five or ten minutes before the break, a man in the audience who identified himself as the decedent's cousin, yelled profanities at the witness. Defense counsel described the event as lasting several minutes, and the outburst was highly inflammatory. The man could not be immediately removed from the courtroom as he was in a wheelchair. Defense counsel opined that a cautionary instruction to the jury would not be sufficient and moved for a mistrial. The trial judge held that a cautionary instruction to the jury would be sufficient to cure any taint and denied defendant's motion for a mistrial.

When the trial resumed, the trial judge made the following statements to the jury:

> I appreciate your patience today, ladies and gentlemen.
>
> I should apologize for the outburst that you heard this afternoon during the session. Usually, these deputies of mine act a little quicker and a little faster before anything is said. But due to the fact that that particular spectator was in a wheelchair, they were a little bit slower in their reaction.
>
> But I do want to remind you that you are to base this case on the evidence, not upon what a spectator might say in the courtroom.

Defendant was not denied a fair trial. The trial court gave a cautionary instruction that stressed to the jury that it was only to consider evidence properly admitted at trial. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a mistrial. *Griffin*, supra.

*Collins,* 2001 WL 1134735 at *8.

According to defense counsel, the spectator had stated during Herron's testimony "The motherfuckers killed my cousin. Bitch, why don't you talk about the bracelet." Petitioner asserts that he was denied due process because the trial court should have declared a mistrial or, at the very least, was required, pursuant to *Remmer v. United States*, 350 U.S. 377 (1956), to conduct an investigation into the impact the outburst had on the jury.

Petitioner's claim, to the extent it is based upon *Remmer*, is unexhausted, because he did not fairly present this claim to the state courts in his direct appeal. His briefs to the Michigan Court of Appeals and the Michigan Supreme Court claim simply that the trial court

28

abused its discretion by denying defendant a mistrial, cite solely state law cases, and do not assert that the trial court should have conducted a hearing on the issue of prejudice. As discussed above, Michigan law would prevent him from returning to exhaust the claim, so the claims is procedurally defaulted.

Furthermore, it is not reasonably likely that Collins would have succeeded in his direct appeal if he had raised a claim based upon *Remmer*. That case dealt with private contacts with a juror, which the defendant was unaware of until the trial was concluded. In this case, the spectator outburst was public, and conducted in full view of defense and counsel. Thus, the relevant United States Supreme Court precedent is *Carey v. Musladin*, 549 U.S. 70 (2006). In that case, the petitioner asserted that his due process rights were violated by the fact that members of the victim's family sat in the front row of the spectators' gallery wearing buttons with photographs of the victim. The state appellate courts held that the defendant had failed to show that the conduct of the spectators had prejudiced his right to a fair trial. The Ninth Circuit Court of Appeals granted the writ, but the United States Supreme Court reversed. The Supreme Court held that it had never addressed a claim raising the question of when private actor courtroom conduct was so inherently prejudicial that it deprived a defendant the right to a fair trial, aside from cases where the proceedings were a sham or mob dominated. Given the lack of direct Supreme Court precedent, there was no "clearly established Federal law" that required the state court to apply a particular test to the spectators' conduct, and therefore the test applied by the state court was not unreasonable. *Carey*, 549 U.S. at 76-77.

Applying *Carey* to the facts of the present case, the Michigan court did not unreasonably apply clearly established federal law in upholding the trial court's denial of a mistrial. There is no clearly established United States Supreme Court precedent that

29

holds that spontaneous, public spectator outbursts carry a presumption of prejudice, or that requires a *Remmer* hearing following such an outburst, and Collins has not demonstrated prejudice.  Collins has therefore failed to meet his burden of showing that the decision of the Michigan courts was contrary to clearly established federal law.

## V.  CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Proceedings, the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant...."  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To receive a certificate of appealability, a petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted).  The Court finds that its resolution of Collins' claims would not be debatable among reasonable jurists, and the petition does not present issues that deserve encouragement to proceed further.  It therefore does not issue a certificate of appealability.

## VI. CONCLUSION

Petitioner's habeas claims are procedurally defaulted and lack merit.  Accordingly, the petition for writ for habeas corpus will be denied and the matter will be dismissed with prejudice.

## ORDER

**WHEREFORE** it is hereby **ORDERED** that the petition for writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED** on all grounds raised by the petitioner.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: February 29, 2012

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 29, 2012, by electronic and/or ordinary mail.

Carol Cohron
Case Manager